The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
The stipulations of the parties are contained in their Pretrial agreement dated June 28, 1994 and were filed with the Deputy Commissioner at the time of the initial hearing. That Pre-trial agreement is incorporated into the record. In addition, the parties agreed to the stipulation into evidence of the following medical records, reports and other documents:
1. Plaintiff's Exhibit 1, medical records from Dr. George W. Davenport, consisting of five pages;
2. Plaintiff's Exhibit 2, the records of Eastern Carolina Internal Medicine, consisting of 41 pages;
3. Plaintiff's Exhibit 3, the records of New Bern Orthopaedic Associates, Inc., consisting of three pages;
4. Plaintiff's Exhibit 4, the records of Craven Regional Medical Center, consisting of 21 pages;
5. Plaintiff's Exhibit 5, the records of East Carolina Orthopaedics, consisting of ten pages;
6. Plaintiff's Exhibit 6, the records of Coastal Neuro-Psychiatric Associates, P.A., consisting of two pages;
8. Plaintiff's Exhibit 8, the records of Dr. Ira M. Hardy, II, consisting of three pages;
9. Plaintiff's Exhibit 9, the records of Pitt County Memorial Hospital, consisting of 11 pages;
10. Plaintiff's Exhibit 10, the records of Dr. G. H. Engelstatter, Carolina Psychological Health Services, consisting of nine pages;
11. Plaintiff's Exhibit 12, correspondence dated January 11, 1991, consisting of one page;
12. Plaintiff's Exhibit 13, a one page letter dated May 17, 1991 from plaintiff's previous counsel;
13. Plaintiff's Exhibit 14, a Form 28B dated October 23, 1990;
14. Plaintiff's Exhibit 15, a Form 25R dated March 27, 1991 by Dr. Davenport;
15. Plaintiff's Exhibit 16, consisting of plaintiff's income tax records for the years 1989, 1990, 1991 and 1991;
16. Defendants' Exhibit 1, the records of Dr. Langley, consisting of two pages;
17. Defendants' Exhibit 2, the records of Dr. Bob Rollins, consisting of ten pages. The parties also agreed that North Carolina Industrial Commission Forms 19, 18, 28B, Form 33 and 33R are stipulated into evidence.
* * * * * * * * * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff worked as a truck mechanic for the defendant-employer and had continuously worked for the defendant-employer for approximately two decades up to and including October 31, 1989.
2. On October 31, 1989, plaintiff was working on a truck owned by defendant-employer when he stepped on a battery box which broke. He fell, injuring his back.
3. Plaintiff gave notice to his employer, Harvey B. Yancey, that same day that he had accidentally injured his back.
4. Plaintiff could not perform his normal tasks of being a truck mechanic, and for the next several months he had to ask others for help. Plaintiff started seeing Dr. George W. Davenport in order to seek relief from his painful condition.
5. On or about January 1, 1990, plaintiff was informed by Mrs. Nancy Yancey, secretary of the employer, that he might as well find another job due to his back injury. Plaintiff stopped working for defendant-employer because of this statement by the secretary and also because he could no longer physically perform the required tasks of the job. Plaintiff has been essentially unemployed since January 1, 1990.
6. Dr. Davenport diagnosed plaintiff's injury as a strain to his lumbar spine. The plaintiff was also seen by Dr. Davenport on November 11, 13, 16, 20, 28 and December 13, and January 29, 1990 wherein the plaintiff related paresthesia to the lateral toes. Dr. Davenport's report states that plaintiff's disability will continue indefinitely as far as his returning to his former employment. This statement is accepted as credible and convincing.
7. Next, plaintiff sought medical attention from Dr. Wendy Moeller of the Eastern Carolina Internal Medicine Group whereby she diagnosed plaintiff as suffering from lumbosacral strain. His back and leg pain did not improve, so Dr. Moeller referred him to New Bern Orthopaedic Associates.
8. On April 10, 1990, Dr. Donald Bright of New Bern Orthopaedic Associates diagnosed plaintiff as having a resolving lumbar strain.
9. Plaintiff continued to have low back pain and returned to Dr. Moeller on August 14, 1990 and November 7, 1990 and continued his complaints of low back pain. He further related that the pain was now radiating down into his right leg. Dr. Moeller notes an objective finding in that the plaintiff's right ankle jerk was slightly decreased compared to his left. Dr. Moeller referred plaintiff for an MRI scan. Dr. Moeller attempted to help plaintiff get some vocational rehabilitation because in her opinion plaintiff is limited by a seventh grade education and an inability to physically do the work he was previously doing for the defendant-employer.
10. Said MRI did not reveal any disc herniation, and plaintiff was referred to Dr. Mark G. Wertman on November 30, 1990, whereby Dr. Wertman diagnosed plaintiff as suffering from post lumbosacral strain and lumbosacral facet arthritis. At this point, plaintiff returned to Dr. Davenport seeking relief from his pain. Dr. Davenport ordered further imaging, namely a CT study which revealed a bulging of his disc at L3-4 interspace and L4-5 interspace on the right. Dr. Davenport also stated that his studies indicated that widespread radiculopathy was evident.
11. On March 22, 1991, Dr. Davenport states that plaintiff reported no significant improvement and rated plaintiff with a ten percent whole body impairment.
12. Plaintiff continued to have low back pain and was referred to Dr. Ira M. Hardy of Eastern Carolina Neurosurgical Associates, Inc. where a myelogram and a lumbar spine CT was performed on April 17, 1991. Although the myelogram was normal and the CT scan also appeared negative, Dr. Hardy diagnosed plaintiff as having lumbar radiculopathy. No surgery was recommended.
13. Plaintiff was still unable to return to work because of back and intermittent right leg pain. On January 26, 1993, Dr. Wertman prescribed a series of epidural steroids due to plaintiff's history of bulging discs. On July 14, 1993, Dr. Wertman, in a letter to plaintiff's attorney, writes that he agrees with plaintiff's ten percent permanent partial impairment relating to the back as initially described by Dr. Davenport in March of 1991.
14. On May 27, 1994, Dr. Robert L. Rollins performed a psychiatric evaluation of the plaintiff at the request of defendants' attorney and opined that the diagnostic tests do not indicate significant positive findings. He further stated that Dr. Davenport's findings confirm a long history of somatic symptoms. It was Dr. Rollins' belief that plaintiff's injury of October 31, 1989 precipitated, but did not cause the somatoform pain disorder.
15. Plaintiff was seen by Dr. John T. Langley on July 21, 1994 and Dr. Langley notes lumbosacral facet changes, continued complaints of pain in the plaintiff's back radiating to the right leg, bulging discs at L3-4 and L4-5, and a ten percent restriction of low back motion with tenderness over the lumbar muscles. However, Dr. Langley did find, in his opinion, no permanent impairment.
* * * * * * * * * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. On October 31, 1989, plaintiff sustained an injury by accident when he fell and injured his back. This fall from the battery box on which plaintiff was standing was an unexpected, unlooked for, and untoward event. As a result of this compensable accident, plaintiff sustained a back injury which has disabled him from gainful employment.
2. The plaintiff's disability does not result from a psychiatric condition, somatoform pain disorder, as contended by the defendants, but rather from plaintiff's back injury which has aggravated or accelerated the somatoform pain disorder that was previously asymptomatic.
3. As plaintiff's duties as a mechanic required that he be able to lift 60-70 pounds while bending, the plaintiff cannot presently perform the duties of a full-time truck mechanic.
4. In defendants' independent medical examination of plaintiff conducted by Dr. Langley, he states that plaintiff should be encouraged to attempt to return to gainful employment with possible vocational rehabilitation help and training but that in view of five years of unemployment, it is highly doubtful that plaintiff will be rehabilitated to this state. Accordingly, the undersigned find plaintiff to be temporarily totally disabled from January 2, 1990, and continuing and thus entitled to temporary total disability benefits for such periods as described below.
5. There is no convincing showing within the record of the plaintiff having the physical ability to return to any full-time employment anywhere approaching his former pre-October 31, 1989 employment capability. The record convincingly shows that the plaintiff's work-related injuries prevent him from earning the equivalent amount of wages he was making before his injury.
6. Plaintiff is disabled due to his injury and thus is entitled to compensation at the rate of $233.33 per week commencing January 2, 1990.
7. There is a significant likelihood that plaintiff will require continuing medical compensation as a result of his compensable injury.
* * * * * * * * * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Subject to counsel fee, as provided below, defendants shall pay to plaintiff workers' compensation benefits of $233.33 per week commencing January 2, 1990 and continuing until plaintiff returns to work or until further orders of the Industrial Commission. All of said compensation that has accrued shall be paid in a lump sum without commutation.
2. An attorney fee of 25 percent of the compensation awarded the plaintiff is hereby approved for plaintiff's counsel. Said attorney fee shall be deducted from the compensation payable to the plaintiff and paid directly to plaintiff's counsel. As to compensation payable to the plaintiff in the future, every fourth check of said compensation shall be paid directly to plaintiff's counsel.
3. The defendants shall pay all medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same have been submitted to the defendants for payment. This medical compensation shall continue so long as medical services are rendered to plaintiff to give relief, effect a cure, or lessen his period of disability.
IT IS FURTHER ORDERED that this case be REMOVED from the Full Commission hearing docket.
This the 6th day of November, 1995.
 S/ ____________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ __________________________ THOMAS J. BOLCH COMMISSIONER
S/ __________________________ DIANNE C. SELLERS COMMISSIONER
JHB/nwm 10/20/95